UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DEIRDRE LAWRENCE,

                   Plaintiff,                        **REPORT &**
                                                    **RECOMMENDATION**
                                                    CV 07-2243 (JS) (WDW)

      -against-

TOWN OF BROOKHAVEN DEPARTMENT OF
HOUSING, COMMUNITY DEVELOPMENT &
INTERGOVERNMENTAL AFFAIRS, VALERI J.
BISCARDI, individually and in her official capacity as
Commissioner of the Town of Brookhaven Department
of Housing, Community Development & Inter-
governmental Affairs, ROSEANN D. GALLAGHER,
individually and in her official capacity as Rental
Subsidy Program Coordinator for the Town of
Brookhaven Department of Housing, Community
Development & Intergovernmental Affairs, and
JAMES RYAN, individually and in his official capacity
as Hearing Officer for the Town of Brookhaven
Department of Housing, Community Development &
Intergovernmental Affairs,


                  Defendants.
-------------------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

     Before the court is plaintiff Deirdre Lawrence's motion for a preliminary injunction dated

June 4, 2007, Docket Entry ("DE") [2], seeking reinstatement of her rental subsidy benefits under

the Section 8 Housing Assistance Payments Program of the United States Housing Act of 1937,

as amended by the Housing and Community Development Act of 1974.  42 U.S.C. §1437f.  The

motion was referred to the undersigned by Judge Seybert for a report and recommendation.

Defendants submitted opposition,[1] and a hearing was held on June 26, 2007.  For the reasons

---

     [1]Defendants' opposition included a cross-motion to dismiss.  Defendants subsequently
moved to withdraw their motion to dismiss pending determination of the motion for a

stated herein, it is recommended that plaintiff's motion be denied.

## BACKGROUND

The material facts, drawn from the complaint and the parties' submissions, are undisputed unless otherwise noted. The Section 8 Housing Assistance Payments Program ("Section 8") was established "[f]or the purpose of aiding low-income families in obtaining a decent place to live." 42 U.S.C. §1437f (a). On the federal level, the program is administered by the Department of Housing and Urban Development ("HUD"). Local public housing authorities ("PHAs") are relied upon for individual decisions in program administration. *See* 42 U.S.C. §1437 (a)(C) (vesting these agencies with "the maximum amount of responsibility and flexibility in program administration"). The Town of Brookhaven, as required by federal regulation, prepared and submitted an administrative plan to HUD in conformance with HUD's regulations. That plan was approved by HUD and was in effect during the relevant time periods. Michel Decl. ¶2, DE [8-3].

Plaintiff Deirdre Lawrence ("Lawrence") applied for Section 8 benefits in the Town of Babylon and was ultimately accepted as a program participant in 2003. On or about July 15, 2004, Lawrence moved to the Town of Brookhaven and transferred her Section 8 rental subsidy from Babylon to Brookhaven. Defs.' Mem. of Law at 2, DE [10]. Pursuant to federal regulations, the receiving Town's PHA must immediately place the transferring tenant in suitable housing and undertake re-certification procedures, including criminal background checks, only after the family has been placed in Section 8 housing. *See* 24 C.F.R §§982.355(c)(1) and

---

preliminary injunction. *See* DE [11]. On July 26, 2007, defendants filed a new motion to dismiss the complaint. DE [18].

982.355(c)(9) (the "Portability Rules"). In compliance with these regulations, plaintiff was immediately placed into a rental unit in Bellport and the Town of Brookhaven (the "Town"), pursuant to her Section 8 participation agreement, began paying her entire contract rent of $1,700 directly to her landlord.

In connection with the receiving PHA's practice of performing a compliance review of transferring tenants after placement, the Town's PHA sought plaintiff's criminal arrest record. On or about August 4, 2004, the PHA received plaintiff's arrest record from the Suffolk County Police Department. The record showed that on July 29, 2004, after she had relocated to the Town of Brookhaven, Lawrence was arrested and charged with Criminal Sale of a Controlled Substance in the 3rd degree for drug-related criminal activity that took place in 2003 while she was residing in her Section 8 housing unit in Wyandanch in the Town of Babylon. Arrest Record dated 8/10/04, Defs.' Ex. D; Defs.' Mem., at 2–3. Prior drug-related arrests were also noted. *Id.*

Pursuant to 24 C.F.R. §982.355(c)(9), the receiving PHA may, at any time, terminate assistance to the family in accordance with §§ 982.552 and 982.553, which allow for termination of assistance where a household member violates one of the family obligations, including the obligation not to engage in drug-related criminal activity. The PHA sent Lawrence a notice dated November 17, 2004[2] notifying her of its intention to terminate Lawrence's Section 8 participation and rental subsidy as of December 31, 2004 because of her July 29, 2004 arrest. Defs.' Ex. B. This letter advised plaintiff that "rental assistance is being terminated for your failure to fulfill

---

[2]Defendants claim that in September 2004, the PHA sent Lawrence an earlier letter via both regular and certified mail advising her of her right to explain or dispute the accuracy of the charges listed on her arrested record, but that this mailing was returned unclaimed. Defs.' Mem. at 3.

your program obligations as listed in **24CFR982.551, Obligations of Participant; specifically** your engagement in drug related criminal activity." *Id.* (emphasis in original). Ms. Lawrence timely requested an informal hearing, which was held on April 8, 2005 before James Ryan, Hearing Officer for the Town of Brookhaven Department of Housing, Community Development & Intergovernmental Affairs.

At the hearing, Roseann Gallagher, Rental Subsidy Coordinator for the Town of Brookhaven, testified that she was advised by an Assistant Suffolk County DA that Lawrence was charged with two counts of Criminal Sale of a Controlled Substance in the 3rd degree and Criminal Possession of a Controlled Substance with Intent to Sell. Defs.' Mem., at 4. During the hearing, Lawrence's attorney was given the opportunity to cross-examine Gallagher, but not the arresting officer or the Assistant District Attorney. Defs.' Ex. E. No decision was issued at the hearing.

On or about July 12, 2005, and prior to the issuance of the decision from the April 2005 hearing, Lawrence pled guilty[3] to Attempted Sale of a Controlled Substance in the 3rd degree., a Class A. felony. Tr. 7:8. She received a sentence of 60 days, plus 5 years probation with the requirement that she attend drug rehabilitation. *Id.* 27:20-24.

On or about September 27, 2005, Hearing Officer Ryan issued a decision noting that although the arrest report indicated that plaintiff "sold drugs to an undercover police officer on

---

[3]Plaintiff's attorney argued at oral argument that Lawrence's guilty plea was entered in reliance on the finality of the decision made by the Hearing Officer in the April 8, 2005 informal hearing. However, there was no testimony to such effect, nor was there any other evidentiary basis for this argument. In fact, the timeline of events suggests that such reliance would be impossible since the Hearing Officer did not issue his decision from the April 8, 2005 hearing until September 27, 2005–over 2 months after Lawrence pled guilty.

two separate occasions within three years of admission to the Brookhaven Town Section 8 Program," the PHA's "[e]xclusive reliance on an arrest record without the opportunity to cross examine the arresting officer violates the tenant's right to a full and fair opportunity to be heard and, therefore, the PHA failed to meet its burden of proof." Defs.' Ex. E, Sept. 27, 2005 Decision (the "September 2005 Decision"), at 2. Subsequently, on or about September 29, 2005, the Town requested a current arrest record from the Suffolk County Police Department. Defs.' Ex. G. The updated arrest record, which was received by the Town on or about October, 10, 2005, reflected Lawrence's July 12, 2005 guilty plea. *Id.* This was apparently the first time the Town became aware of plaintiff's plea.

On April 6, 2006,[4] the PHA sent Lawrence another letter notifying her of its intention to terminate her Section 8 participation and rental subsidy based on her plea of guilty to drug-related charges stemming from her July 29, 2004 arrest. Defs.' Ex. H. This notice was identical to the November 17, 2004 notice with the addition of three words—"and pled guilty." *Id.*; Compl. at ¶37. Lawrence again requested an informal hearing which took place on September 22, 2006 before Hearing Officer Ryan. Defs.' Mem. at 5. At the second hearing, the PHA submitted a certified copy of Lawrence's arrest record and Gallagher testified. *Id.*

In an amended decision issued on March 5, 2007 (the "March 2007 amended decision"),[5]

---

[4]The delay between discovery of plaintiff's guilty plea and the issuance of the April 2006 termination letter was explained as a change of administration within the Town and uncertainty as to assignment of counsel to the matter. Tr. 74:1-4.

[5]There is some dispute as to the date of the decision—according to the plaintiff's complaint, an unsigned copy of the decision was sent to her in February and Lawrence disputed whether that copy was valid, though defendants remedied the problem by sending the signed decision dated March 5, 2007. Compl. ¶45.

Ryan noted that subsequent to the first informal hearing regarding Lawrence's criminal activity, she was convicted of a drug-related offence while participating in the Section 8 program in Babylon, and found that this evidence alone was sufficient to support a decision to terminate her Section 8 benefits. *See* March 2007 amended decision, at 2. In a March 12, 2007 Order and Decision signed by Valeri Biscardi, the Commissioner of the Town of Brookhaven Department of Housing, Community Development & Intergovernmental Affairs, the Hearing Officer's decision was adopted and Lawrence's Section 8 rental subsidy was terminated effective March 31, 2007. Decision and Order, Defs.' Ex. L. The PHA ceased paying the plaintiff's rental subsidy as of April 1, 2007. As of June 26, 2007, Lawrence still resided at the same location, but her rent payments were in arrears for three months. Tr. 49:17.

On June 4, 2007, Lawrence filed a complaint against the Town of Brookhaven Department of Housing, Community Development & Intergovernmental Affairs, Valeri J. Biscardi, Roseann D. Gallagher, and James Ryan. On June 11, 2007, District Judge Seybert denied plaintiff's request for a temporary restraining order and referred her motion for a preliminary injunction to the undersigned for a Report and Recommendation.

On June 26, 2007, the parties appeared before the undersigned for a hearing. At that time, parties were given an opportunity to elicit testimony from the following: Deirdre Lawrence; Henry Clarke, the property landlord's father and property manager; Laura Logan, executive assistant to the Commissioner of the Town of Brookhaven's Department of Housing, Community Development & Intergovernmental Affairs; and James Ryan, Hearing Officer for the Town. Based on the papers submitted by the parties and the testimony given at the hearing, the undersigned recommends that plaintiff's motion for a preliminary injunction be denied.

**DISCUSSION**

To prevail on a motion for a preliminary injunction, the movant must demonstrate 1) irreparable harm in the absence of an injunction; and 2) either a) a likelihood of success on the merits, or b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping in the movant's favor. *See Wright v. Giuliani,* 230 F.3d 543, 547 (2d Cir. 2000). However, when "'the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.'" *Sussman v. Crawford,* 488 F.3d 136, 140 (2d Cir. 2007)(quoting *Wright,* 230 F.3d at 547); *see also Beal v. Stern,* 184 F.3d 117, 122 (2d Cir. 1999)(movant seeking injunctive relief in regard to a government action must demonstrate a likelihood of success on the merits). Accordingly, plaintiff must establish a likelihood of success on the merits in order to prevail in her request for injunctive relief.

The typical preliminary injunction is "prohibitory" in that it seeks to maintain the status quo between the parties pending a trial. *See Tom Doherty Assocs. v. Saban Entm't, Inc.,* 60 F.3d 27, 34 (2d Cir. 1995). If the injunction alters the status quo by ordering the performance of an act, it is said to be "mandatory." *Id.* The distinction is important since "[w]here the movant seeks a mandatory injunction (one that will alter the status quo) rather than a prohibitory injunction (one that maintains the status quo), the likelihood-of-success standard is elevated: the movant must show a clear or substantial likelihood of success." *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 97 (2d Cir. 2005)(citation omitted); *see also Sunward Elecs. v. McDonald,* 362 F.3d 17, 24 (2d. Cir 2004) (citing *Doherty,* 60 F.3d at 34) (movant's burden is

more stringent in that "[t]he party seeking the injunction must show a 'clear' or 'substantial' likelihood of success where the injunction sought is mandatory-i.e., it will alter, rather than maintain, the status quo").  Courts have expressed "'greater reluctance to issue a mandatory injunction than a prohibitory injunction.'" *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir. 1985) (quoting *Hurley v. Toia,* 432 F. Supp. 1170, 1175 (S.D.N.Y.) *aff'd mem.* 573 F.2d 1291 (2d Cir. 1977)).

Drawing distinctions between types of injunctive relief has proved difficult since "the status quo is a relative concept, and varies with the perspective from which it is viewed." *Padberg v. McGrath-McKechnie,* 108 F. Supp. 2d 177, 184 (E.D.N.Y. 2000).  It could be argued that "an injunction which orders a party to perform an action it should previously have performed may be characterized as prohibitory, since it does not change the status quo as it would have existed, absent that party's wrongful action." *Id.*  The injunction sought in this case has aspects of both types of injunction.  On one hand, plaintiff seeks an order forcing the reinstatement of her Section 8 benefits, thus a mandatory injunction.  On the other, she seeks this relief so she will have the resources to remain in her home during the pendency of this litigation, thus preserving the status quo.[6]  On balance, the court finds that plaintiff seeks a mandatory injunction and therefore, in order to prevail on her motion, she must establish irreparable harm in the absence of an injunction as well as clear or substantial likelihood of success.

---

[6]The court further notes, however, that while 703 families in the Town of Brookhaven receive Section 8 benefits, Defs.' Mem. at 2,  "the Town of Brookhaven has a waiting list of 3,300 people, eligible people and families" to receive Section 8 benefits.  Tr. 14:1-3.  Therefore, allowing Ms. Lawrence's benefits to be reinstated could well impact the benefits of some other family waiting to receive these limited funds.

## A. Irreparable Harm

Plaintiff claims that without restoration of her Section 8 benefits, she and her three minor children face imminent homelessness due to her inability to pay her rent without those benefits. "The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the first prong of the test for preliminary injunctive relief." *McNeill v. New York City Housing Auth.,* 719 F. Supp. 233, 254 (S.D.N.Y. 1989); *see also Baumgarten v. County of Suffolk,* 2007 WL 1490482, at *5 (E.D.N.Y. May 15, 2007)(impending eviction and resulting homelessness constituted irreparable harm). Plaintiff testified that she has no current source of income, Tr. 35:22-23, and that without the resumption of her Section 8 benefits, she will have to go into a shelter. *Id.* 30:12. Defendants have not presented any evidence to contest the realistic prospect of homelessness established by plaintiff. Thus for the purposes of this motion, the court finds that plaintiff has established irreparable harm absent a preliminary injunction.

## B. Likelihood of Success on the Merits

Plaintiff's complaint alleges that the second informal hearing and the resulting March 2007 amended decision were invalid as they are barred by res judicata, and that defendants misapplied the federal standards for terminating Section 8 benefits in violation of her constitutionally protected property rights.

### 1. Res Judicata

Plaintiff notes that her involvement with drug-related criminal activity in 2003 that led to her July 2004 arrest was the subject of the first informal hearing in April 2005 and the September 2005 decision. Her primary argument is that defendants had a full and fair opportunity to present

their case for termination at that first hearing, and that they failed to do so.  Thus, she argues, the

second informal hearing seeking to terminate her benefits based on the same underlying criminal

activity was barred by the doctrine of res judicata.

The preclusive effect of the first informal hearing on the second informal hearing must be

determined under New York law, which provides that "the doctrines of res judicata and collateral

estoppel are applicable to give conclusive effect to the quasi-judicial determinations of

administrative agencies when rendered pursuant to the adjudicatory authority of an agency to

decide cases brought before its tribunals employing procedures substantially similar to that used

in a court of law."  *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823,

825 (1984) (internal citations omitted).   Although the parties have provided no argument or case

law on whether the informal hearings were quasi-judicial, the court assumes for the purpose of

this motion that they were.

Plaintiff's res judicata argument is that the Town had a full and fair opportunity to

terminate her benefits based on her July 2004 arrest at the first informal hearing, but failed to

provide the necessary witnesses to support the termination.  Thus, she argues, the second hearing

was a new, invalid attempt by the Town to gain the relief it could have had at the first hearing,

and that therefore the Town and the hearing officer were bound by the September 2005 decision.

The argument that the hearing officer was bound by the first decision fails on several

fronts.  First, it is axiomatic that for res judicata to apply, "a judgment must be valid, final, and

on the merits."  Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d §4432.

There is no indication that the first decision was "final."   Plaintiff has presented no case law

regarding the finality of decisions made in a setting such as this, nor has she identified any Town

regulation or authority that would compel such a finding. Moreover, the only testimony

regarding finality offered at the hearing was that provided by Hearing Officer James Ryan who

testified that it was his understanding that his decision after the first informal hearing was not

final. Tr. 77:6-8.

Plaintiff also has failed to establish that the September 2005 decision was on the merits.

In fact, the September 2005 decision found that reliance on the arrest record alone without

affording plaintiff the opportunity to cross-examine witnesses "violates the tenants right to a full

and fair opportunity to be heard." Defs.' Ex. E, Sept. 2005 decision, p.2. The hearing officer

thus found in Ms. Lawrence's favor on procedural, not substantive, grounds.

Even if the decision rendered after the first hearing had been "final" and "on the merits,"

the doctrine of new evidence allows the admission of evidence regarding plaintiff's guilty plea.

*See, e.g., King v. Fox,* 418 F.3d 121, 130 (2d Cir. 2005)(availability of new evidence weighs

against collateral estoppel finding); *Ponterio v. Kaye,* 2007 WL 141053, at *10 (S.D.N.Y. Jan.

22, 2007) (denial of plaintiff's application for reconsideration constituted new evidence which

was previously unavailable to him). Plaintiff has presented no case law to suggest that a

decisionmaker may not reconsider a prior holding on the basis of new evidence. Indeed, "[t]he

determination of whether the first action provided a full and fair opportunity to litigate the

question requires a consideration of the nature of the forum and the importance of the claim in

prior litigation, the incentive to litigate and the actual extent of litigation, the competence of

counsel, the availability of new evidence, and the foreseeability of future litigation." *Losey v.*

*Roberts,* 677 F. Supp. 101, 105 (N.D.N.Y. 1986) (citing *Ryan,* 478 N.Y.S.2d at 827). Plaintiff

entered her guilty plea subsequent to the first hearing, but before the first decision was rendered.

11

The Town did not learn of the guilty plea until after the issuance of the September 2005 decision. Since plaintiff had not yet entered her plea at the time of the first hearing, clearly that evidence was not available to the Town at that time. *Cf. Ryan,* 478 N.Y.S.2d at 492-93 (evidence was in party's possession at original and subsequent proceedings but never used). The basis for the Town's second notification of termination was plaintiff's guilty plea. While the September 2005 decision was based on plaintiff's lack of opportunity to cross-examine witnesses, the March 2007 amended decision was based solely upon plaintiff's guilty plea to the drug-related charges at issue. The Town did not attempt to introduce the witnesses that did not appear at the first hearing, but rather relied solely on Ms. Gallagher's testimony and the guilty plea. The availability of new evidence thus allowed the hearing officer to reconsider his prior holding.

The undersigned concludes that plaintiff has failed to establish clear or substantial likelihood of success on the argument that the second informal hearing was barred by res judicata.

2. Due Process

Plaintiff also argues that the Town's termination decision was not supported by applicable federal regulations. Although she does not specify it as such, her argument seems to be rooted in requirements for due process of law. To satisfy traditional due process requirements, a proceeding for termination of public assistance must meet the following criteria: 1) timely notice stating the reason for the termination, 2) an opportunity to appear at a hearing and to present evidence and question witnesses, 3) the right to representation by counsel at the hearing, 4) the right to have a the decision rest solely on the rules of law and evidence adduced at the hearing, and 5) the right to an impartial decision maker. *Goldberg v. Kelly,* 397 U.S. 254,

266-71 (1970). Plaintiff does not appear to raise any argument regarding the insufficiency of any of these criteria except the requirement that the decision rest solely on the rules of law.

Plaintiff claims that her guilty plea to acts committed in 2003, "is by itself, not a violation of the federal regulations governing her Section 8 participation." Pl. Mem., at 9. She argues that the determination to terminate her benefits was erroneous because the federal regulation relied upon for that determination requires that she be "currently engaged" in criminal activity. Plaintiff relies upon the federal regulation that provides that assistance may be terminated "if the PHA determines that : (A) Any household member is currently engaged in any illegal use of a drug." [7] 24 C.F.R. §982.553(b)(1)(i)(A). Plaintiff argues that there is no evidence that she was currently engaged in drug activity in April 2006 when the decision terminating her benefits was rendered.

Plaintiff's reliance on §982.553(b)(1)(i) of the regulations is misplaced. This subsection states that the PHA must establish standards that allow for termination for current drug use or a pattern of drug use that interferes with the peaceful enjoyment of the property by other residents. However, a later portion of this regulation states that the "PHA must establish standards that allow the PHA to terminate assistance under the program for a family if the PHA determines that any family member has violated the family's obligation under §982.551 not to engage in any drug-related criminal activity." 24 C.F.R. §982.553(b)(1)(iii). It is this subsection that the Town

---

[7]This regulation goes on to permit termination where "[a] pattern of illegal use of a drug by any household member interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents." 24 C.F.R. §982.553(b)(1)(i)(B). Plaintiff argues that there is no evidence that would support such a finding and, indeed, defendants do not argue that the decision to terminate her benefits was made on this basis.

used to terminate plaintiff's benefits.[8]

The PHA is empowered to permissively deny admission or terminate assistance "if the family violates any family obligations under the program," 24 C.F.R. §982.552(c)(1)(i), including engaging in "drug-related criminal activity." 24 C.F.R. §982.551(l). The Brookhaven Administrative Plan ("Brookhaven Plan") provides that "[a]ssistance will be terminated for participants who have been: Arrested . . . for drug-related or violent criminal activity during participation in the program and within the last three (3) years prior to the date of the notice to terminate assistance." Brookhaven Plan, ch. 15 (B). The Brookhaven Plan was submitted to and approved by HUD. Michel Decl., ¶2. Plaintiff has not argued, and indeed has presented no evidence to support an argument, that this look-back period is improper or may not be utilized by the Town. Since plaintiff pled guilty to drug-related criminal activity that occurred within three years, the Town's decision to terminate her benefits for failure to comply with family obligations is supported by the applicable regulations. *See, e.g., Kelly v. Topeka Housing Auth.,* 2004 WL 2378839, at *2 (D. Kan. Oct. 13, 2004)(stating that the PHA has the right to terminate payments if it determines that a family member has violated the family's obligation under §982.551 not to engage in drug-related criminal activity).

Plaintiff also argues that defendants failed to consider the fact that she successfully completed drug rehabilitation subsequent to her arrest. Federal regulations allow a PHA to

---

[8]Although the first notice sent to plaintiff on September 28, 2004 specifically referenced the language of §982.553(b)(1)(i), this notice was returned unclaimed, and the subsequent notices referred to plaintiff's failure to fulfill her program obligations as listed in §982.551. It was plaintiff's failure to comply with The Family Responsibilities and Obligations that supported the termination proceedings leading to both the September 2005 decision and the March 2007 amended decision, not any alleged current use or pattern of use in violation of §982.553(b)(1)(i).

consider whether the household member has completed a supervised drug rehabilitation when making a determination whether to "terminate assistance for illegal **use** of drugs. . . by a household member who is no longer engaged in such behavior."  24 C.F.R. §982.552 (c)(2)(iii) (emphasis added).  Plaintiff's reliance on this section fails for two reasons.  The section is permissive in that it allows the PHA, but does not require it, to consider this circumstance.  More importantly, plaintiff's conviction was for the <u>sale</u> of illegal drugs, not merely their use.  Thus her rehabilitation does not appear to be relevant.

Since plaintiff has failed to establish substantial likelihood of success on the merits of her claim, the undersigned recommends that her request for injunctive relief be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to all parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).


Dated: Central Islip, New York
　　　August 3, 2007

　　　　　　　　　　　　　　　　　　　　　/s/ William D. Wall
　　　　　　　　　　　　　　　　　　　　WILLIAM D. WALL
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

15