UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
DEIRDRE LAWRENCE,

                    Plaintiff,

          -against-

TOWN OF BROOKHAVEN DEPARTMENT OF
HOUSING, COMMUNITY DEVELOPMENT &
INTERGOVERNMENTAL AFFAIRS, VALERI
J. BISCARDI, individually and in
her official capacity as Commissioner
of the Town of Brookhaven Department
of Housing, Community Development &
Intergovernmental Affairs, ROSEANN D.
GALLAGHER, individually and in her
official capacity as Rental Subsidy
Program Coordinator for the Town of
Brookhaven Department of Housing,
Community Development & Inter-
governmental Affairs, and JAMES RYAN,
individually and in his official
capacity as Hearing Officer for the
Town of Brookhaven Department of
Housing, Community Development &
Intergovernmental Affairs,

                    Defendants.

------------------------------------X

ORDER ADOPTING REPORT
AND RECOMMENDATION
07-CV-2243 (JS)(WDW)

Appearances:
For Plaintiff:      Michael S. Wigutow, Esq.
                    Nassau/Suffolk Law Services Committee, Inc.
                    Touro Law School
                    One Helen Keller Way
                    Hempstead, NY 11550

For Defendants:     Jeltje DeJong, Esq.
                    Devitt Spellman Barrett
                    50 Route 111
                    Smithtown, NY 11787

                    Marie M. Michel, Esq.
                    Town of Brookhaven Law Department
                    Renaissance Plaza
                    One Independence Hill,
                    Farmingville, NY 11738

SEYBERT, District Judge:

The Court is in receipt of Magistrate Judge William D. Wall's Report and Recommendation regarding Plaintiff Deirdre Lawrence's ("Plaintiff") order to show cause for a preliminary injunction seeking reinstatement of her rental subsidy benefits, dated August 3, 2007 ("Report and Recommendation"). Presently pending before the Court are (1) Plaintiff's objections to Magistrate Judge Wall's recommendation that the Court deny Plaintiff's motion for a preliminary injunction and (2) a cross-motion to dismiss by Defendants Town of Brookhaven Department of Housing, Community Development & Intergovernmental Affairs ("Housing Authority"), Valerie Biscardi ("Biscardi"), Roseann Gallagher ("Gallagher"), and James Ryan ("Ryan").

## BACKGROUND

As noted, there are distinct motions pending and the standards under which the motions, and the facts related thereto, are analyzed differ. Unless otherwise noted, the following facts are taken from the Complaint, as well as documents referenced in or relied upon by Plaintiff in the Complaint,[1] and are presumed to be true for purposes of deciding the pending motion to dismiss. The Court may consider and rely on other facts in considering

---

[1] In deciding a 12(b)(6) motion to dismiss, the Court may review the Complaint, as well as any documents referenced in or relied upon by Plaintiff in the Complaint. See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002).

Plaintiff's request for a preliminary injunction, the Report and Recommendation, and Plaintiff's objections to the Report and Recommendation.

Since July 2004, Plaintiff has resided in the Town of Brookhaven ("Brookhaven") with her three minor children. (Compl. ¶ 29.) Prior to moving to Brookhaven, Plaintiff and her children lived in the Town of Babylon ("Babylon"). While living in Bablyon, Plaintiff received federal rental subsidies under the Section 8 Housing Assistance Payments Program of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974 ("Section 8"). (Id. ¶ 30; see also 42 U.S.C. §§ 1437 et seq. The Section 8 program is administered by the Department of Housing and Urban Development ("HUD"), which has promulgated regulations governing the Section 8 program ("HUD Regulations"). (Compl. ¶ 16; see also 24 C.F.R. Parts 5 and 982.) On the local level, the Section 8 program is administered by local public housing authorities ("PHAs"). See 42 U.S.C. § 1437(a)(1)(C).

Both Babylon and Brookhaven have PHAs that administer the Section 8 program in their respective towns. In Brookhaven, the PHA is Defendant Housing Authority. (Compl. ¶ 8.) Defendant Biscardi is the Commissioner of the Housing Authority, and Defendant Gallagher is the Rental Subsidy Program Coordinator for the Housing Authority. (Id. ¶¶ 9-10.)

When Plaintiff moved from Babylon to Brookhaven in July

2004, she continued to receive Section 8 benefits, pursuant to HUD Regulations, through March 31, 2007. (*Id.* ¶¶ 1, 29.) Specifically, Plaintiff's Section 8 benefits were transferred pursuant to Section 982.355 of the HUD Regulations (the "Portability Rules"). (*Id.* ¶ 30.)

Although not specifically alleged in the Complaint, on July 30, 2004, after Plaintiff moved to Brookhaven and her Section 8 benefits had transferred to Brookhaven, the Housing Authority, specifically, Gallagher, requested that the Suffolk County Police Department conduct a criminal background check on Plaintiff. (Preliminary Injunction Hr'g ("PI Hr'g") Defs.' Ex. D.) The criminal report reflected that, on July 29, 2004, Plaintiff had been arrested for drug-related criminal activity that occurred in 2003. (Compl. ¶ 31.) On November 17, 2004, Gallagher issued a termination notice ("2004 Notice") to Plaintiff stating that, "effective December 31, 2004, rental assistance is being terminated for your failure to fulfill your obligations under the Housing Choice Voucher Program." (*Id.* ¶ 32; PI Hr'g Defs.' Ex. B.) The 2004 Notice also indicated that the decision to terminate Plaintiff's Section 8 benefits was based on Plaintiff's failure to fulfill her program obligations under "24 CFR 982.551" as a result of a July 29, 2004 arrest for Criminal Sale of a Controlled Substance in the 3rd Degree. (Compl. ¶ 32; PI Hr'g Defs.' Ex. B.) Plaintiff was also informed that she had the right to request an

informal hearing to contest the termination, which she did. (Compl. ¶ 33; PI Hr'g Defs.' Ex. B.)

The informal hearing was held on April 8, 2005 before Defendant Ryan, and Gallagher was the only witness called to testify on behalf of the Housing Authority. (Compl. ¶ 33.) Several months later, a written decision was issued finding that the Housing Authority did not establish by a preponderance of the evidence that Plaintiff violated her obligations under the Section 8 program ("September 2005 order"). (Id. ¶ 34.) More specifically, Ryan found that because Plaintiff was not given the opportunity to cross examine the arresting officer or the Assistant District Attorney, she was denied the right to a full and fair opportunity to be heard. (PI Hr'g Defs.' Ex. D at 3.) As a result, the Housing Authority continued to subsidize Plaintiff's rent under the Section 8 program. (Compl. ¶ 34.)

On or about September 29, 2005, shortly after receiving the September 2005 order, Gallagher again requested a criminal background check on Plaintiff from the Suffolk County Police Department. (Id. ¶ 35; PI Hr'g Defs.' Ex. G.) On or about October 12, 2005, Gallagher was informed that Plaintiff's July 29, 2004 arrest resulted in a guilty plea. (Compl. ¶¶ 36-37.) Approximately six months later, on April 6, 2006, Gallagher issued a second termination letter ("2006 Notice") to Plaintiff based on the July 29, 2004 arrest to which Plaintiff "pled guilty." (Id. ¶

37.) Again, the 2006 Notice advised Plaintiff she had the right to request an informal hearing, which she did. (Id. ¶ 38.)

The second informal hearing was held on September 22, 2006 before Ryan and, again, Gallagher was the only witness to testify on behalf of the Housing Authority. (Id. ¶ 39.) In addition, Plaintiff submitted evidence at the informal hearing, including a letter from her landlord, stating that she was a tenant in good standing, and a letter indicating that she was enrolled in a rehabilitation treatment program. (Id. ¶ 40.) Approximately five months later, on February 15, 2007, Gallagher sent a letter informing Plaintiff that her Section 8 assistance would be terminated as of February 28, 2007. (Id. ¶ 44.) The letter was accompanied by an unsigned, undated informal hearing decision indicating that the Housing Authority's determination to termination Plaintiff's benefits had been sustained. (Id.)

Plaintiff complained that she had not promptly received a written decision from Ryan. (Id. ¶ 45.) Plaintiff alleges that, in response to this complaint, Gallagher simply re-dated the February 15, 2007 letter to March 15, 2007, and attached the same informal hearing decision, which was now dated March 5, 2007 and included an illegible signature ("March 2007 order"). (Id.) On or about March 12, 2007, Biscardi issued an order terminating Plaintiff's Section 8 benefits as of March 31, 2007. Pursuant to Biscardi's order, the Housing Authority did not subsidize

Plaintiff's rent after March 31, 2007.

On June 4, 2007, Plaintiff commenced this action against Defendants. On June 11, 2007, this Court denied Plaintiff's request for a temporary restraining order and referred Plaintiff's request for a preliminary injunction to Magistrate Judge William D. Wall for a Report and Recommendation. On June 26, 2007, Judge Wall held a preliminary injunction hearing ("PI Hearing"), at which both parties offered evidence and called witnesses to testify. Subsequently, Defendants filed the pending motion to dismiss.

DISCUSSION

I. <u>Standards Of Review</u>

   A. <u>Legal Standard Under Rule 12(b)(6)</u>

In <u>Bell Atl. Corp. v. Twombly</u>, -- U.S. --, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court disavowed the half-century old standard set forth in <u>Conley v. Gibson</u> that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), (<u>overruled by</u> <u>Bell Atl. Corp.</u>, 127 S. Ct. 1955 (2007). Holding that "<u>Conley</u>'s 'no set of facts' language has been questioned, criticized, and explained away long enough," the Supreme Court expressly rejected the standard in favor of a requirement that the plaintiff plead enough facts "to state a claim

for relief that is plausible on its face." <u>Bell Atl. Corp.</u>, 127 S. Ct. at 1969, 1974. The Court explained that the complaint "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965. To be clear, <u>Bell Atlantic</u> does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." <u>Id.</u> at 1974.

The Second Circuit has interpreted <u>Bell Atlantic</u> to require "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007). Moreover, in applying this new standard, the district court must still accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of Plaintiff. <u>See Cleveland v. Caplaw Enter.</u>, 448 F.3d 518, 521 (2d Cir. 2006); <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100 (2d Cir. 2005).

B.    <u>Legal Standard Upon Review Of A Report And Recommendation</u>

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." <u>Walker v. Vaughan</u>, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citation omitted). A party may serve and file

specific, written objections to a magistrate's report and recommendation within ten days of receiving the recommended disposition. <u>See</u> FED. R. CIV. P. 72(b). Upon receiving any timely objections to the magistrate's recommendation, the district "court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1)(C); <u>see also</u> Fed. R. Civ. P. 72(b). A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they object. <u>See</u> <u>Barratt v. Joie</u>, No. 96-CV-324, 2002 U.S. Dist. LEXIS 3453, at *2 (S.D.N.Y. March 4, 2002) (citations omitted).

When a party raises an objection to a magistrate judge's report, the Court must conduct a <u>de</u> <u>novo</u> review of any contested sections of the report. <u>See</u> <u>Pizarro v. Bartlett</u>, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). However, "[w]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." <u>Barratt</u>, 2002 U.S. Dist. LEXIS 3453, at *2 (citations omitted).

As discussed in more detail below, Plaintiff makes specific objections to certain findings set forth in the Report and Recommendation. Some of the objections are detailed and supported by new arguments; other objections, however, are either conclusory or simply rehash Plaintiff's original arguments. The Court,

9

therefore, will engage in a _de novo_ review of the findings to which Plaintiff specifically objects and supports her objections with new arguments and will review the remainder of the Report and Recommendation for clear error. Under the _de novo_ standard, the Court will make an independent determination of the specific findings to which Plaintiff objects, giving no deference to any previous resolution. _See_ _Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc._, 280 F. Supp. 2d 184, 198 (S.D.N.Y. 2003). The Court is not limited to consideration of evidence presented to the magistrate judge, but may review the entirety of the record. _See_ Fed. R. Civ. P. 72(b).

II. <u>Plaintiff's Objections To The Report And Recommendation</u>

Plaintiff filed objections to the Report and Recommendation on August 17, 2007, in which she disputes the following findings and/or statements made by Magistrate Judge Wall: (1) that Defendant Housing Authority "must immediately place the transferring tenant in suitable housing and undertake re-certification procedures, including criminal background checks" (R&R at 2.), (2) that Defendants first became aware of Plaintiff's guilty plea on or about October 10, 2005, (3) that Plaintiff is seeking a mandatory injunction rather than a prohibitory injunction, (4) that the first informal hearing conducted by Defendant Ryan was not a final decision on the merits and, therefore, not entitled to res judicata effect, (5) that the

doctrine of new evidence allows the admission of evidence regarding Plaintiff's guilty plea, (6) that Plaintiff's argument seems to be rooted in requirements for due process of law, (7) that Plaintiff's reliance on 24 C.F.R. § 982.553(b)(1)(i) is misplaced, (8) that the Housing Authority relied on 24 C.F.R. § 982.553(b)(1)(iii) to terminate Plaintiff's benefits, (9) that the applicable HUD Regulations support Defendants' determination to terminate Plaintiff's Section 8 benefits based on her guilty plea, (10) that the Housing Authority's use of a three-year look-back period to determine whether to terminate Section 8 benefits is permissible, and (11) that Plaintiff's completion of a drug rehabilitation program does not appear to be relevant.

    A.   <u>Conclusory, Unsupported, And Repetitive Objections</u>

As noted above, certain of Plaintiff's objections are either wholly conclusory, unexplained, or simply reiterate arguments previously made to and considered by Judge Wall.

The first of this type of objection is set forth as Plaintiff's second objection – an objection to Judge Wall's finding that Defendants apparently first became aware of Plaintiff's guilty plea on or about October 10, 2005. This factual statement is set forth in the Background section of the Report and Recommendation. Plaintiff concedes that on or about October 10, 2005, Defendants received Plaintiff's criminal record from the Suffolk County Police Department, but argues that Defendant Roseann Gallagher had been in

communication with an assistant district attorney and no evidence
was offered as to when Defendants first discovered that Plaintiff
pled guilty.  Plaintiff fails, however, to explain the significance
of Judge Wall's factual finding.  More importantly, this argument
contradicts the allegations in the Complaint and a statement made
by Plaintiff's attorney at the PI Hearing before Judge Wall;
namely, that "[t]he housing authority, after the conviction, then
subsequently – they actually found out about the conviction in
October of 2005, and then in April 2006, issued a second
termination notice . . . ." (PI Hr'g Tr. 7, June 26, 2007; Compl.
¶ 36.)  The Court is perplexed by Plaintiff's argument that no
evidence was offered as to when Defendants first learned of
Plaintiff's guilty plea.

        Nevertheless, it does not appear that Judge Wall relied
on this fact in making his recommendation that Plaintiff's request
for a preliminary injunction be denied.  The only issue to which
this fact appears to be relevant is res judicata.  Specifically,
whether Defendants had a full and fair opportunity to terminate
Plaintiff's Section 8 benefits at the first hearing and whether
they had new evidence.  As Judge Wall correctly notes, "[s]ince
plaintiff had not yet entered her plea at the time of the first
hearing, clearly that evidence was not available to the Town at
that time." (R&R at 12.)  Judge Wall does not rely, nor does he
need to rely, on when Defendants learned that Plaintiff pled

guilty.

Furthermore, "[t]o the extent that [Plaintiff] object[s] to the Magistrate's supposed factual findings, [Plaintiff] prematurely raise[s] this objection. None of the Magistrate's findings of fact nor this Order's recitation of facts are conclusive." RxUSA Wholesale, Inc. v. HHS, No. 06-CV-5086, 2006 U.S. Dist. LEXIS 89232, at *12-13 (E.D.N.Y. Dec. 11, 2006). "'[F]indings of fact . . . made by a court granting a preliminary injunction are not binding at trial on the merits [because] . . . a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" Id. (citing Thornburgh v. Am. Coll. of Obstetricians & Gynecologists, 476 U.S. 747, 806, 106 S. Ct. 2169, 90 L. Ed. 2d 779 (1986)). "A party is not required to prove his case in full at a preliminary-injunction hearing." Id. (internal citations omitted). Consequently, the Court find this objection to be completely without merit.

The Court also rejects Plaintiff's sixth objection, which is stated in a conclusory manner and completely unsupported by argument or reason. Magistrate Judge Wall's finding that Plaintiff seems to be making arguments based on due process of law is not facially erroneous. In fact, Plaintiff's attorney specifically stated that one of the issues raised by this case is a due process issue. (Preliminary Injunction Hr'g Tr. 5 ("And there are by and

large two issues that I am raising in this particular case: one is a procedure due process issue . . . .").) Accordingly, the Court finds this objection to be without merit.

The Court addresses the remaining objections in turn.

B.    Legal Standard For A Preliminary Injunction - Mandatory Versus Prohibitory Injunction

The Court next addresses Plaintiff's third objection, which challenges Magistrate Judge Wall's finding that Plaintiff is seeking a mandatory injunction rather than a prohibitory injunction.

In most cases, a movant seeking a preliminary injunction must establish "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly" in the movant's favor. Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000).  For this Court to issue a preliminary injunction against "government action taken in the public interest pursuant to a statutory or regulatory scheme," however, the movant must show "(i) irreparable harm absent the injunction and (ii) a likelihood of success on the merits."  Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (citations omitted).  Moreover, "where the movant seeks a mandatory injunction (one that will alter the status quo) rather than a prohibitory injunction (one that

maintains the status quo), the likelihood-of-success standard is elevated: the movant must show a clear or substantial likelihood of success." <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 97 (2d Cir. 2005).

Plaintiff requests this Court to order Defendants to "continue" Plaintiff's Section 8 benefits pending resolution of this action. As is the case with many preliminary injunctions, Plaintiff's request can be phrased as a mandate, requiring affirmative action, or prohibitively, maintaining the status quo. Essentially, however, Plaintiff asks this Court to order Defendants to reinstate benefits they previously terminated. Such a request is in the nature of a mandate and, therefore, must satisfy the elevated standard.

Citing only Black's Law Dictionary, Plaintiff argues that the parties' status prior to the contested action - termination of Section 8 benefits - is what is sought to be maintained. In other words, Plaintiff seeks to maintain the status quo that existed prior to the contested termination. Defendants note that Plaintiff's Section 8 benefits were terminated as of March 31, 2007, and this action was commenced more than two months after her benefits ceased. Essentially, Defendants urge this Court to look to the status of the parties at the time the action was commenced, not, as Plaintiff argues, at the time immediately prior to when the contested decision was made. Therefore, Defendants argue,

Plaintiff seeks an alteration of the status quo as it existed when the action was commenced.

The Second Circuit has repeatedly cautioned that "'[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics.'" <u>Louis Vuitton Malletier v. Dooney & Bourke, Inc.</u>, 454 F.3d 108, 114 (2d Cir. 2006) (<u>quoting Tom Doherty Assocs. v. Saban Entm't</u>, 60 F.3d 27, 34 (2d Cir. 1995)). Although Plaintiff presents an interesting argument, the Court finds that Judge Wall correctly used the heightened standard applicable to mandatory injunctions. Another court in this district recently faced that issue argument and found the plaintiff's argument untenable

> The plaintiff's apparent interpretation of the term 'status quo' lacks a basis in law or common sense . . . . <u>Black's Law Dictionary</u> defines the term 'status quo' simply as '[t]he situation that currently exists.' Bryan A. Garner, <u>Black's Law Dictionary</u> 1448 (8th ed. 2004). Because the relief sought by the plaintiffs' motion for a preliminary injunction and temporary restraining order would alter the relationship between the parties as it currently exists by compelling the defendants to undertake an affirmative course of conduct, namely the reinstatement of business relations with the plaintiffs, the plaintiff must justify their request for these provisional remedies by demonstrating a substantial likelihood of success on the merits of their claims.

<u>Union Cosmetic Catle, Inc. v. Amorepacific Cosmetics USA, Inc.</u>, 454 F. Supp. 2d 62, 68 (E.D.N.Y. 2006) (alterations in original). So too, here, Plaintiff seeks to compel Defendants to undertake an

affirmative course of conduct, namely the reinstatement of Section 8 benefits. As a result, Plaintiff must demonstrate irreparable harm absent the injunction and a clear or substantial likelihood of success on the merits of her claims. See id.

   C.   Section 8 Portability Rules

      Section 982.355 of the HUD Regulations governs the process by which a receiving PHA administers Section 8 benefits concerning a family moving from one PHA to another. In this case, Plaintiff was receiving tenant-based Section 8 benefits from Babylon. On or about July 15, 2004, Plaintiff moved to Brookhaven and transferred her tenant-based Section 8 benefits from Bablyon to Brookhaven, the receiving PHA. (R&R at 2.) Citing to Sections 982.355(c)(1) and (9), the Report and Recommendation states that "[p]ursuant to federal regulations, the receiving Town's PHA must immediately place the transferring tenant in suitable housing and undertake re-certification procedures, including criminal background checks, only after the family has been placed in Section 8 housing." (R&R at 2.) Plaintiff objects to this statement, and, quoting only to Section 982.355(c)(1), states that "'the receiving PHA does not redetermine eligibility for a [portable] family that was already receiving assistance in the initial PHA Section 8 tenant-based program.'" (Pl.'s Objections to R&R ¶ 1 (quoting 24 C.F.R. § 982.355(c)(1)).) Plaintiff fails to further explain or develop this argument, but the Court assumes that Plaintiff is

17

attempting to argue that Defendants did not have authority to re-examine Plaintiff's eligibility to receive Section 8 benefits when she moved to Brookhaven.

Plaintiff neglects, however, to read the Portability Regulations in their entirety. Further down in Section 982.355(c), the Portability Regulations clearly state that

> [t]o provide tenant-based assistance for portable families, the receving PHA <u>must</u> perform all PHA program functions, such as reexaminations of family income and composition. At any time, either the initial PHA or the <u>receiving PHA</u> may make a determination to deny or <u>terminate assistance</u> to the family in accordance with §§ 982.552 and § [sic] 082.553.

24 C.F.R. § 982.355(c)(9) (emphasis added). While the receiving PHA must first place the transferring family in suitable housing, it may then examine the family's continued eligibility for Section 8 benefits. Accordingly, Defendants were well within their authority to re-examine whether Plaintiff continued to be in compliance with the HUD Regulations after they placed her in suitable housing in Brookhaven. While the Report and Recommendation could have been slightly more clear in its use of the word "re-certification," it very clearly stated that any inquiry must be made "only after the family has been placed in Section 8 housing." (R&R at 2.) Whether the court used the term "re-certification" or "re-examination" is irrelevant because it applied the concept correctly.

Moreover, the HUD Regulations require PHAs to monitor, re-examine and re-evaluate participant's eligibility under Section 8, which may include, among other things, review of a participant's criminal record and an annual certification. See 24 C.F.R. Parts 5 and 982. The Court finds, therefore, that Defendants had the authority to re-examine Plaintiff's continued eligibility for Section 8 benefits by, among other things, conducting a criminal background check, after placing her and her family in Section 8 housing.

D. Res Judicata

Plaintiff makes three separate objections regarding whether the first informal hearing should be accorded res judicata effect: (1) Judge Wall's finding that the first informal hearing decision was not a final decision, (2) Judge Wall's finding that the first informal hearing was not on the merits and (3) Judge Wall's consideration of the "doctrine of new evidence" to the res judicata analysis.

The parties do not dispute that the Court must look to New York law to determine whether res judicata applies. The doctrine of res judicata, or claim preclusion, is based on the theory that "a valid final judgment bars future actions between the same parties on the same cause of action." Parker v. Blauvelt Volunteer Fire Co., Inc., 93 N.Y.2d 343, 347, 712 N.E.2d 647, 690 N.Y.S.2d 478 (1999). Essentially, "it prevents a plaintiff from

raising a claim that was or could have been raised in a prior suit." <u>McKithen v. Brown</u>, 481 F.3d 89, 104 (2d Cir. 2007). New York courts employ a "transactional approach" to claim preclusion. <u>Id.</u> In other words, "if claims arise out of the same 'factual grouping' they are deemed to be part of the same cause of action and the later claims will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief." <u>Davidson v. Capuano</u>, 792 F.2d 275, 278 (2d Cir. 1986); <u>see also</u> <u>O'Brien v. City of Syracuse</u>, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687 (1981) ("once a claim is brought to a <u>final conclusion</u>, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy") (emphasis added). Under New York law, claim preclusion bars a subsequent action if the Court finds that

> (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.

<u>Pike v. Freeman</u>, 266 F.3d 78, 91 (2d Cir. 2001) (internal quotation marks and citation omitted). Furthermore, "[i]n considering whether a party has had a full and fair opportunity to litigate a prior determination, we examine 'the forum for the prior litigation, its extensiveness, the competence and experience of counsel, the availability of new evidence, and indications of a

20

compromise verdict.'" <u>Long Island Lighting Co. v. Transamerica Delaval</u>, 646 F. Supp. 1442, 1451 (S.D.N.Y. 1986) (<u>quoting</u> <u>Murphy v. Gallagher</u>, 761 F.2d 878, 883 (2d Cir. 1985)).

In finding the doctrine of res judicata inapplicable, Judge Wall noted that Plaintiff failed to present any case law or regulations regarding the finality of decisions made by informal hearing officers.  Additionally, as noted in the Report and Recommendation, the hearing officer, Ryan, testified at the PI Hearing that the September 2005 decision, rendered after the hearing, was not on the merits.  (Hr'g Tr. 77.)

In support of Plaintiff's objections, she cites to case law standing for the proposition that Plaintiff's participation in the Section 8 program is a constitutionally protected property right.  She also cites to HUD Regulations setting forth the procedure to be followed when a PHA is terminating Section 8 benefits.  These arguments and reasoning, however, are irrelevant to Plaintiff's contention that Ryan's September 2005 decision is entitled to res judicata effect.  Plaintiff, once again, fails to cite to case law, regulations or authority to support the proposition that the first decision by Ryan was a final determination on the merits.

Without any case law, the Court fails to see how the <u>informal</u> hearing and Ryan's written decision based on such hearing can be considered a final determination on the merits.  Indeed,

Ryan testified that his decision was not on the merits. Furthermore, the Supreme Court's decision in Goldberg v. Kelly, the seminal case in establishing due process requirements when federally-funded benefits are being terminated, supports this finding.

> [T]he pre-termination hearing has one function only: to produce an <u>initial</u> determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits.

Goldberg v. Kelly, 397 U.S. at 266 (emphasis added). Absent any evidence to the contrary, the fact that the hearing has been described as informal and initial, supports a finding that the 2005 September decision should not be accorded preclusive effect.

In the absence of any legal support to establish that the September 2005 decision was final and binding, the Court finds that res judicata does not apply. The remainder of Plaintiff's objections regarding this issue are irrelevant as they do not affect the determination that the first informal hearing and decision was not a "final conclusion" and, therefore, not entitled to res judicata effect. O'Brien, 54 N.Y.2d at 357.

Moreover, Judge Wall's consideration of the doctrine of new evidence was in the alternative. In other words, had he found that the September 2005 order was final and on the merits, Defendants could still terminate Plaintiff's Section 8 benefits based on Plaintiff's guilty plea – a fact not known at the time of

the first hearing – because it was new evidence.  Having previously
determined that the September 2005 decision is not entitled to
preclusive effect, any analysis of the doctrine of new evidence is
irrelevant and unnecessary to the Court's evaluation of Judge
Wall's ultimate recommendation.

E.    Section 8 Of The HUD Regulations

The remainder of Plaintiff's objections concern Judge
Wall's findings regarding a number of the HUD Regulations governing
Section 8.   Specifically, Plaintiff objects to Judge Wall's
findings that (1) Plaintiff's reliance on 24 C.F.R. §
982.553(b)(1)(i) is misplaced, (2) the Housing Authority relied on
§ 983.553(b)(1)(iii) to terminate Plaintiff's benefits, (3) the
applicable HUD Regulations support Defendants' determination to
terminate Plaintiff's Section 8 benefits, (4) the Housing
Authority's use of a three-year look-back period was proper, and
(5) Plaintiff's successful completion of a drug rehabilitation
program does not appear to be relevant.  It appears that for the
Court to make any determination and coherently address Plaintiff's
objections regarding the application of the HUD Regulations, this
Court must engage in a de novo review of whether it appears that
the applicable HUD Regulations support Defendants' termination of
Plaintiff's Section 8 benefits.

The Court concedes that the HUD Regulations are a bit
cumbersome and require one to cross-reference and flip between a

number of subsections.  The obligations of a person receiving benefits are set forth in Section 982.551 of the HUD Regulations. One such obligation, among many, is that

> members of the household may not engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises (see § 982.553).

24 C.F.R. § 982.551(l).  The Court notes that the language concerning the threat to health, safety or right of peaceful enjoyment modifies only the last listed activity – "other criminal activity" – it does not modify the first and second listed activities – "drug-related criminal activity or violent criminal activity."  Id.  Accordingly, any argument by Plaintiff that she did not violate the HUD Regulations because her activity did not pose a threat to health, safety or right of peaceful enjoyment are unavailing.  Plaintiff's conduct violated the prohibition on drug-related criminal activity; therefore, it need not also be a threat.

Next, Section 982.552 details when it is appropriate for a PHA to deny or terminate assistance for a family generally, and Section 982.553 specifically concerns denial and termination of assistance for criminals and alcohol abusers.  Namely, a PHA has authority to deny or terminate program assistance if, among other things "the family violates any family obligations under the program (see § 982.551)" or "the family has been engaged in

24

criminal activity or alcohol abuse as described in § 982.553." 24 C.F.R. §§ 982.552(c)(1)(i) and (xi). Section 982.552 also sets forth certain circumstances to be considered when a PHA is deciding whether to deny or terminate assistance. See id. § 982.552(c)(2).

Plaintiff correctly notes that Section 982.553(a) of the HUD Regulations deals with "Denial of admission" while Section 982.553(b) deals with "Terminating assistance." Judge Wall found that Plaintiff's reliance on Section 982.553(b)(1)(i) was misplaced because it concerns termination of assistance based on current drug use or a pattern of drug use, facts that do not pertain to Plaintiff. (R&R at 13.) To be clear, the Report and Recommendation does not suggest that Plaintiff's reliance on all subsections of 982.553(b) is misplaced, simply Section 982.553(b)(1)(i). Although it appears that the Housing Authority cited Section 982.553(b)(1)(i) in certain notices, neither the Housing Authority nor Ryan specifically relied on this subsection in deciding to terminate Plaintiff's benefits. (PI Hr'g Defs.' Exs. J and L.)

Proceeding to Section 982.553(b), which deals specifically with "terminating assistance for drug criminals," the HUD Regulations provide that a PHA must establish standards allowing the PHA to terminate program assistance if the PHA determines that a household member is currently engaged in illegal drug use, is engaged in continued illegal drug use that "interferes

with the health, safety or right to peaceful enjoyment of the premises by other residents," or "has violated the family's obligations under § 982.551 not to engage in any drug-related criminal activity." 24 C.F.R. §§ 982.553(b)(1)(i) and (iii).[2] Pursuant to these mandatory HUD Regulations, the Brookhaven Administrative Plan ("Brookhaven Plan"), which was submitted to and approved by HUD, (Michel Decl. ¶ 2.), states that the PHA will terminate program assistance for a participant who has been

> arrested . . . for drug-related or violent criminal activity during participation in the program, and within the last three (3) years prior to the date of the notice to terminate assistance.

Brookhaven Plan, ch. 15(B). Although the HUD Regulations do not specify a time period to consider when terminating assistance for drug-related criminal activity, the Brookhaven Plan limits the termination of assistance for drug-related criminal activity to a time period during participation in the program and within three years of the date of the termination notice. Plaintiff argues that

---

[2] Plaintiff states that Defendant Gallagher cites to 24 C.F.R. §§ 982.551, 552 and 553, without reference to any specific subsection, in the notice sent to Plaintiff terminating her Section 8 benefits. Plaintiff states, therefore, that she objects to Judge Wall's finding that the Housing Authority used Section 982.553(b)(1)(iii) to terminate Plaintiff's benefits. Judge Wall does make this statement; however, he also cites to Sections 982.551 and 552 in his discussion and analysis. As is clear from this Court's analysis of the HUD Regulations, the various subsections cross-reference one another. Reliance on Section 982.553(b)(1)(iii) necessarily means the family obligations under Section 982.551 were violated.

this three-year look-back period contained in the termination section of the Brookhaven Plan conflates the standards for denial of admission with termination of assistance.

The relevant HUD Regulations concerning denial of admission reference a three-year look-back where an applicant has been evicted for drug-related criminal activity, 24 C.F.R. § 982.553(a)(1)(i), and a "reasonable" look-back period where the PHA determines that the applicant has engaged in drug-related criminal activity. Id. §§ 982.553(a)(2)(ii)(A) and (B). The HUD Regulations do not, however, provide any time limits or restrictions on look-back periods with respect to termination of assistance. It appears, therefore, that the Brookhaven Plan is actually more restrictive with respect to when a participant may be terminated for drug-related activity than the HUD Regulations require. While this distinction is actually more participant-friendly than the HUD Regulations, it does not appear to render the Brookhaven Plan inconsistent with the HUD Regulations.

On or about July 12, 2005, Plaintiff pled guilty to Attempted Sale of a Controlled Substance in the 3rd Degree in connection with her arrest on July 29, 2004 for Criminal Sale of a Controlled Substance in the 3rd Degree, involving an incident that took place in 2003 while Plaintiff was still residing in her Section 8 housing unit in the Town of Babylon. On April 6, 2006, Defendants sent Plaintiff, for the second time, a notice indicating

that her Section 8 benefits would be terminated based on her guilty plea. Accordingly, Plaintiff was arrested for drug-related criminal activity during her participation in the program and within three years of the date she was notified of the termination of her Section 8 benefits.

Ryan cites to Section 982.553(c) in his decision, dated March 5, 2007, upholding the Housing Authority's decision to terminate Plaintiff's Section 8 benefits. Section 982.553(c) states that the

> PHA may terminate assistance for criminal activity by a household member as authorized in this section if the PHA determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity.

24 C.F.R. § 982.553(c). Unlike the September 2005 order, Ryan's March 2007 order found that Plaintiff's guilty plea and subsequent conviction sufficiently established, by a preponderance of the evidence, that Plaintiff had engaged in drug-related criminal activity. (PI Hr'g Defs.' Ex. J.) It appears, therefore, that termination of Plaintiff's Section 8 benefits is supported by the HUD Regulations and the Brookhaven Plan.

Plaintiff correctly notes that although the Housing Authority had the discretion to consider Plaintiff's successful completion of a drug rehabilitation program and her good standing as a tenant in deciding whether to terminate her Section 8

benefits, it chose not to consider such factors. The HUD Regulations provide that the

> PHA <u>may</u> consider all relevant circumstance such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

24 C.F.R. § 982.552(c)(2)(i) (emphasis added). The HUD Regulations further state that a participant's completion of a supervised drug rehabilitation program be considered in deciding whether to deny or terminate assistance based on a participant's illegal drug <u>use</u>. <u>Id.</u> § 982.552(c)(2)(iii). Accordingly, the Report and Recommendation correctly states that Plaintiff's completion of a drug rehabilitation program does not appear to be relevant under Section § 982.552(c)(2)(iii) because Plaintiff was engaged in the sale of drugs, not illegal use of drugs. Moreover, while Defendants could have considered other factors, including Plaintiff's completion of a drug rehabilitation program, her good standing as a tenant, and the effect on Plaintiff's children if assistance was terminated, it was not required to consider such factors. <u>See</u> <u>id.</u> § 982.552(c)(2)(i). It is not for this Court to mandate, or even question, Defendants' consideration of discretionary factors when it appears that they complied with the HUD Regulations in all respects.

Based on the foregoing, the Court finds that Plaintiff has not established a likelihood, let alone a clear or substantial likelihood, of success on the merits of her claims. Accordingly, the Court ADOPTS the Report and Recommendation in its entirety.

III. Defendants' Motion To Dismiss

Many of the issues raised in connection with the request for a preliminary injunction also are implicated by the pending motion to dismiss. Defendants' main argument is that the Complaint should be dismissed for failure to state a claim for violation of Plaintiff's due process rights. Defendants also contend that the second decision to terminate Plaintiff's Section 8 benefits was not precluded by the doctrine of res judicata,[3] the individual Defendants are entitled to qualified immunity, and Plaintiff has failed to sufficiently state a Section 1983 claim against the Housing Authority – a municipal entity.

In response, Plaintiff correctly notes that, unlike a preliminary injunction motion, dismissal pursuant to Rule 12(b)(6) is not based on whether Plaintiff is likely to prevail, and all reasonable inferences must be viewed in a light most favorable to Plaintiff. See Caplaw Enter., 448 F.3d at 521. The Court remains mindful that the standard on a motion to dismiss is quite different

---

[3] Defendants also make arguments related to double jeopardy; however, Plaintiff has not asserted a double jeopardy argument and this action is not a criminal matter. Accordingly, the Court need not address this argument.

from the standard for granting a preliminary injunction. In opposing a motion to dismiss, Plaintiff is not required to prove her case; she must simply establish that the allegations in the Complaint are sufficient to render her claims "plausible." Iqbal, 490 F.3d at 158.

Plaintiff contends, therefore, that she has sufficiently pleaded facts to show that it is "plausible" that Defendants' decision to terminate her assistance did not conform to the requirements set forth in applicable law and regulations. Specifically, Plaintiff argues that (1) termination of Plaintiff's benefits was barred by the doctrine of res judicata, (2) there was no evidence that Plaintiff's criminal activity was (a) threatening or interfered with the "health, safety, or right to peaceful enjoyment" or (b) occurring at the time the termination notice was issued, (3) Defendants' reliance on a three-year look-back period to terminate assistance was not sanctioned by the HUD Regulations, (4) Defendants' failure to cite to the Brookhaven Plan in the termination notice deprived Plaintiff of her due process rights, and (5) the individual Defendants are not entitled to qualified immunity. Notably, Plaintiff does not address Defendants' Monell argument with respect to allegations against the Housing Authority.

A.  Res Judicata

The parties arguments regarding the doctrine of res judicata are nearly identical to the arguments raised in connection

31

with the motion for a preliminary injunction.  For the reasons discussed in more detail above, the Court finds the doctrine of res judicata inapplicable.  Plaintiff does, however, cite to one case in her opposition brief that she did not raise in her objections to the Report and Recommendation.

Plaintiff cites to <u>Allied Chemical v. Niagara Mohawk Power Corp.</u>, 72 N.Y.2d 271, 532 N.Y.S.2d 230 (1988), to support her argument that the first informal hearing was a final decision on the merits.  While the <u>Allied Chemical</u> case is instructive in determining whether an administrative agency is quasi-judicial, it does not support a finding that res judicata applies here.  Indeed, the New York Court of Appeals explained that

> [t]he court must look at the over-all context of the agency's decision to assess whether according a preclusive effect to a particular agency determination is consistent with the agency's scheme of administration; for example, the agency's need for flexibility, and its need to modify prior determinations in order to adapt its policy to changing conditions, may counsel against applying issue preclusion to a particular administrative decision.

<u>Id.</u> at 577.  As discussed more fully above, the Court finds the September 2005 decision did not preclude a second termination notice, second hearing and second determination to terminate Plaintiff's assistance.

B.   <u>Section 1983 Claim</u>

Section 1983 provides a means of redress for

32

constitutional violations by persons acting under color of state law.  This statute does not create a substantive right; rather to recover, a Plaintiff must establish the deprivation of a separate, federal right.  See Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).  Complaints that allege Section 1983 violations must have specific allegations of fact that indicate that a deprivation of statutory or constitutional rights occurred.  See id.; Humpherys v. Nager, 962 F. Supp. 347, 351 (E.D.N.Y. 1997).  Moreover, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite . . . under § 1983."  Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) (internal quotation marks and citations omitted).  In relevant part, the statute provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Plaintiff alleges that Defendants violated her due process rights as protected by the Fourteenth Amendment and her statutory rights under the United States Housing Act of 1937 and the HUD Regulations promulgated thereunder.  The parties do not

dispute that recipients of public assistance, such as Section 8 assistance, have a protected property interest in continuing to receive such assistance, and that violations of federal housing laws are actionable under Section 1983. See Wright v. Roanoke Redev. & Hous. Auth., 479 U.S. 418, 429, 107 S. Ct. 766, 93 L. Ed. 2d 781 (1987); Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); Kapps v. Wing, 404 F.3d 105, 113 (2d Cir. 2005) ("procedural due process protections ordinarily attach where state or federal law confers an entitlement to benefits"); Price v. Rochester Hous. Auth., No. 04-CV-6301, 2006 U.S. Dist. LEXIS 71092, at *17-18 (W.D.N.Y. Sept. 29, 2006) (noting the due process protection afforded to Section 8 participants).

In order to terminate such a protected property interest, due process requires (1) timely and adequate notice, including the reasons for the proposed termination, (2) an opportunity to be heard at a pre-termination hearing, including the right to present evidence and confront and cross-examine witnesses, (3) a right to be represented by counsel at the hearing, (4) a written decision, including the reasons for the determination and the evidence on which the decision maker relied, and (5) an impartial decision maker. See Goldberg, 397 U.S. at 266-71. The HUD Regulations also require the basic procedural guidelines set forth in Goldberg. See 24 C.F.R. §§ 982.552 and 982.555.

It is undisputed that Plaintiff received two termination

notices, the 2004 Notice and the 2006 Notice. Both termination notices clearly indicated that assistance was being terminated based on Plaintiff's engagement in drug-related criminal activity. Specifically, the 2004 Notice states that on July 29, 2004, Plaintiff was charged with selling drugs, and the 2006 Notice adds that Plaintiff pled guilty to such charge. Plaintiff argues that, although the 2006 Notice cited to the HUD Regulations, it nonetheless violated her due process rights because it failed to cite to the Brookhaven Plan. Plaintiff cites Edgecomb v. Housing Authority of The Town Vernon in support of this argument. 824 F. Supp. 312 (D. Conn. 1993).

In Edgecomb, the court found the termination notice sent by the housing authority violated the plaintiff's due process rights because it did not indicate which family member violated the HUD Regulations, the nature of the alleged crime or when the relevant acts were committed. Id. at 315. "The notice merely restated the regulation relied on." Id. A proper notice, the court explained, "would state the particular felony and the person who allegedly committed it, and would give a brief factual statement concerning the incident." Id. The notices provided to Plaintiff, unlike the notice in Edgecomb, did just that; they stated the particular crime – Criminal Sale of a Controlled Substance in the 3rd Degree, the person who allegedly committed it – Plaintiff, a brief factual statement – the date of the charge and

the county in which it occurred. In short, the 2004 and 2006 Notices sufficiently informed Plaintiff of the allegations so that she could prepare a defense and cited generally to the HUD Regulations pursuant to which the Housing Authority acted; namely, "24CFR982.551, Obligations of Participant" and "24CFR982.553 Denial of admission and termination of assistance for criminals and alcohol abusers." There is no requirement that the termination notice specifically cite to the Brookhaven Plan. Accordingly, Defendants' failure to cite to the Brookhaven Plan in the 2004 and 2006 Notices did not violate Plaintiff's due process or statutory rights.

The only other <u>Goldberg</u> factor that Plaintiff appears to allege was violated concerns Ryan's March 2007 Order. Specifically, Plaintiff alleges that Ryan failed to adequately articulate his reasoning, promptly furnish his decision and comply with procedural guidelines. (Compl. ¶¶ 87, 90.) <u>Goldberg</u> requires that the decisionmaker state the reasons for his determination and indicate the evidence on which he relied. <u>Goldberg</u> 397 U.S. at 271. Moreover, the HUD Regulations require that the decisionmaker state "briefly the reasons for the decision" and "promptly" furnish a copy of the decision to the participant. 24 C.F.R. § 982.555(e)(6). The HUD Regulations do not provide any additional information or guidance regarding what the brief statement must contain.

The Court finds helpful the explanation provided by HUD in its Final Rule concerning requirements of a termination hearing. In rejecting a rule that would require the hearing officer to include both legal and evidentiary grounds for the decision, HUD explained that

> [t]he statement of the decision required by the regulation tells the participant what was decided, and the reasons for the decision. A requirement for a legalistic statement of evidentiary and legal grounds for the decision would add little of [sic] benefit to the participant. The character of the decision is not more informative or comforting to the participant when stated as an enumeration of 'evidentiary' and 'legal' grounds.
>
> The statement of decision required by the regulation must be truly informative as to the reasons for the decision. This would include a short statement of the elements of fact or law on which the decision is actually based. A bare and conclusory statement of the hearing decision, that does not let the participant know the basic reasons for the decision, will not satisfy the regulatory requirement.

Section 8 Housing Assistance Payments Program; Existing Housing, 49 Fed. Reg. 12215, 12230 (March 29, 1984) ("HUD Final Rule").

The March 2007 order provides a brief statement of the facts, including the fact that Plaintiff transferred to Brookhaven from Babylon. (DeJong Decl. Ex. E.) Ryan also explains that a recipient of Section 8 benefits, "as a condition of continued participation in the program, must not engage in drug-related criminal activity." Id. The March 2007 order further states that the Housing Authority had received an arrest report alleging that

Plaintiff _sold_ drugs to an undercover police officer within three years of admission to the Housing Authority program and that Plaintiff was subsequently convicted of selling drugs. Based on such evidence, Ryan found Plaintiff violated Housing Authority rules and the termination of Section 8 benefits should be sustained. _See_ _id._

It appears, although it is not certain, that Ryan relied on Sections 982.551 and 982.553(b)(1)(iii), concerning drug-related criminal activity, and those portions of the Brookhaven Plan promulgated pursuant to such regulations, in sustaining the Housing Authority's decision to terminate Plaintiff's Section 8 benefits. While Ryan cites to Section 983.553(c), which goes to the evidentiary standard, he does not indicate on which section of the HUD Regulations he relies. Preexisting law, whether it be in the form of case law or regulations, however, does not require that the decisionmaker include in his decision the exact provisions violated. The March 2007 order sufficiently informed Plaintiff of the particular action that violated the HUD Regulations – sale of drugs – and that such activity was established by a preponderance of the evidence based on Plaintiff's guilty plea. Consequently, the Court finds that Ryan adequately articulated his reasoning.

HUD Regulations also require that a copy of the hearing decision be "furnished promptly to the family." 24 C.F.R. § 982.555(e)(6). The second hearing was held on September 22, 2006

and the decision was first provided, undated and unsigned, in February 2007, and a for a second time, dated and signed, in March 2007. Essentially, a copy of the decision was provided within six months of the hearing date. Nothing in the HUD Regulations or case law prescribes a time period in which a decision must be provided. In light of the lack of clear guidance and the realities facing PHAs in administering the Section 8 program, the Court finds that the six-month delay did not violate Plaintiff's due process or statutory rights.

Plaintiff devotes a considerable amount of her opposition arguing that Defendants' decision to terminate her Section 8 benefits is not supported by the applicable regulations. Specifically, Plaintiff cites to allegations that there was no evidence of "current" drug-related criminal activity, (Compl. ¶ 41), and no evidence that Plaintiff had interfered with the "health, safety or right to peaceful enjoyment of their premises." (Id. ¶ 42.) Plaintiff further alleges that Gallagher did not consider the consequences of the proposed termination on Plaintiff and her children. (Id. ¶ 43.)

As discussed more fully above, certain sections of the HUD Regulations deal with current drug use and a pattern of illegal drug use, see 24 C.F.R. §§ 982.551(l), 982.552(c)(1)(i), 982.553(b)(1)(i), while other sections deal with drug-related criminal activity and other criminal activity that threatens the

health, safety or right to peaceful enjoyment of other residents. See id. §§ 982.551(l), 982.552(c)(1)(i), 982.553(b)(1)(iii). The allegations cited in Plaintiff's opposition only concern the fact that she was not currently engaged in illegal drug use and that she did not pose a threat to the health or safety of other residents. While the 2006 Notice cites to HUD Regulations dealing with admission to the Section 8 program and other seemingly irrelevant HUD Regulations, (PI Hr'g Defs.' Ex. H.), nowhere in the March 2007 order does Ryan indicate that Plaintiff's assistance was terminated based on current drug use or activity that threatened the health or safety or right to peaceful enjoyment of other residents. As discussed above, Ryan based his decision on the arrest report alleging that Plaintiff sold drugs to an undercover officer and Plaintiff's guilty plea. Consequently, Plaintiff's focus on HUD Regulations related to current drug-related activity and the health, safety or right to peaceful enjoyment of the premises is misplaced.

Plaintiff also alleges that although the federal statute and HUD Regulations provide for discretionary, not mandatory, termination under the circumstances of this case, "defendants' rigid and limited determination process evinces a mandatory bent." (Compl. ¶ 76.) Plaintiff alleges that almost immediately after receiving Ryan's September 2005 order, Gallagher used her official position with the Housing Authority to pursue information from

Suffolk County Police Department regarding the outcome of Plaintiff's July 29, 2004 arrest. (<u>Id.</u> ¶¶ 34-35, 77.) After receiving information in October 2005 that Plaintiff pled guilty, the Housing Authority and Gallagher waited until April 6, 2006 to issue a second termination notice. (<u>Id.</u> ¶ 78.) Additionally, there are allegations that the March 2007 order, which Gallagher originally sent to Plaintiff, unsigned, in February, was of questionable authorship. (<u>Id.</u> ¶ 79.)

Plaintiff does not allege that Gallagher obtained Plaintiff's arrest record for an improper purpose or that she did not have authority to request such records. In fact, there are provisions in both the HUD Regulations and the Brookhaven Plan that authorize the Housing Authority to periodically obtain a participant's criminal records. <u>See</u> 24 C.F.R. Parts 5 and 982. The simple fact that almost immediately after receiving the September 2005 order, Gallagher again requested Plaintiff's arrest record does not violate HUD Regulations or due process. Furthermore, the fact that Gallagher learned of Plaintiff's guilty pleas in October 2005 and did not send the second termination notice for nearly six months did not violate Plaintiff's rights. To be sure, <u>Goldberg</u> requires that participants be provided with timely notice of termination. Additionally, Section 982.555(c)(2) requires that the PHA give the family "prompt written notice[,]" including a brief statement of reasons for the decision to

41

terminate assistance, a statement that the family may request a
hearing and a deadline by which the hearing must be requested. 24
C.F.R. § 982.555(c)(2). Nowhere in the HUD Regulations or Final
Rule, however, is the word "prompt" assigned an exact time period
or explained further. In addition, after surveying the relevant
case law, there does not appear to be any cases that provide
guidance as to what would be considered "prompt" notice.[4] As with
the delay in providing a copy of the March 2007 order, the Court
finds that, based on the lack of clear guidance and the realities
facing PHAs in administering Section 8 benefits, the delay in
sending the 2006 Notice did not violate Plaintiff's due process or
statutory rights.

Plaintiff's allegations regarding the undated, unsigned
order sent to Plaintiff in February 2007 are, at this point,
sufficient to make out a violation of Plaintiff rights. If, in

---

[4] Moreover, even if the Court were to find that the delays
in sending the 2006 Notice and the March 2007 order violated
Plaintiff's rights, the respective Defendants would be entitled
to qualified immunity with respect to those actions. As set
forth in Section III.D, infra, public officials are entitled to
qualified immunity if their conduct does not violate clearly
established law. See Harlow v. Fitzgerald, 457 U.S. 800, 818,
102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The timing
requirements for a termination notice, however, are anything but
clear and defined. As a result, it would not have been clear to
a reasonable official that waiting approximately six months –
from October 2005, when Gallagher received notice that Plaintiff
plead guilty, to April 6, 2006 – to send a termination notice was
unlawful. Consequently, Gallagher would be entitled to qualified
immunity with respect to the delay in sending the 2006 Notice.

fact, Gallagher sent Plaintiff a decision that was not the decision of the impartial hearing officer, such actions would not comport with requirements of due process. Since the Court must accept the allegations as true on a motion to dismiss, it cannot, at this point, find that Plaintiff has failed to allege a Section 1983 claim against Gallagher.

The only allegation of Biscardi's personal involvement is that she issued the order terminating Plaintiff's Section 8 benefits "without having reviewed any of the evidence, testimony, or arguments presented at the informal hearing." (Id. ¶ 47.) In the Final Rule, HUD explains that the "PHA has the final responsibility to act in accordance with controlling Federal, State or local legal requirements, and this obligation may not be altered by any decision of the hearing officer." HUD Final Rule VII.C.7.c(2). Not only does this explanation provide further support for the finding that the hearing officer's decision is not final, but it also suggests that the Housing Authority is obligated to review the hearing officer's decision. An obligation to review Ryan's decision, however, does not necessarily require Biscardi to review the evidence, testimony and arguments made during the informal hearing. Plaintiff does not allege that Biscardi completely failed to review Ryan's March 2007 order sustaining termination of Plaintiff's Section 8 benefits; she merely states that Biscardi did not delve into the evidence and arguments

43

introduced at the hearing.  In the event Biscardi found the March 2007 order complied with HUD Regulations and tenets of due process – a determination this Court has also made – Biscardi would have no reason and, indeed, would be under no obligation, to review the evidence and arguments presented at the hearing.  The Complaint does not allege, however, that Biscardi determined or had knowledge that the March 2007 order did not satisfy HUD Regulations or requirements of due process.  Accordingly, the only allegation pertaining to Biscardi's personal involvement fails to amount to a violation of Plaintiff's rights.  See Provost, 262 F.3d at 154.  As such, the Court finds that Plaintiff failed to sufficiently state a Section 1983 claim against Biscardi.

     C.   <u>Municipal Liability</u>

Defendants specifically move to dismiss Plaintiff's Section 1983 claim against the Housing Authority for failure to plead that a Housing Authority policy, practice or custom violated Plaintiff's rights.  Plaintiff does not respond to this argument.

Under <u>Monell v. Department of Social Services</u>, a municipality may not be held vicariously liable under Section 1983 for the actions of employees below the policymaking level.  436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1977). Accordingly, to state a Section 1983 claim against a municipality based on the actions of employees below the policymaking level, Plaintiff must plead "'three elements: (1) an official policy or

custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" <u>Zahra v. Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995)(quoting <u>Batista v. Rodriquez</u>, 702 F.2d 393, 397 (2d Cir. 1983)); <u>see also</u> <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1977). "Local governing bodies . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." <u>Monell</u>, 436 U.S. at 690-91 (citations omitted).

The Complaint is completely devoid of any fact alleging that Plaintiff was injured as a result of the Housing Authority's policy, custom or practice or actions of an employee with final policymaking authority. Additionally, Plaintiff offers no explanation in her opposition papers for her failure to plead such required facts. Consequently, Plaintiff's Section 1983 claim against the Housing Authority is DISMISSED for failure to state claim.

D.    <u>Qualified Immunity</u>

Defendants also move to dismiss Plaintiff's claims against the individual Defendants based on qualified immunity. Because the Court has determined that Plaintiff has failed to allege a Section 1983 claim against Defendants Ryan and Biscardi, the Court need not address whether they are entitled to qualified

45

immunity. The Court does, however, analyze whether Gallagher is shielded from suit based on the remaining allegation.

Public officials are entitled to qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). As the Supreme Court and Second Circuit have further explained, "even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." Higazy v. Templeton, No. 05-CV-4148, 2007 U.S. App. LEXIS 24443, at *19 (2d Cir. Oct. 19, 2007) (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 253 (1987)). The Court is mindful that the issue of qualified immunity should be decided at the earliest time possible. See Castro v. United States, 34 F.3d 106, 112 (2d Cir. 1994). Oftentimes, however, it is more prudent to reserve decision until affidavits are submitted and a summary judgment motion is made. See id. (stating that qualified immunity is "a defense that often can and should be decided on a motion for summary judgment."); Maloney v. County of Nassau, No. 03-CV-4178, 2007 U.S. Dist. LEXIS 71162, at *36 (E.D.N.Y. Sept. 24, 2007) (internal quotation marks omitted) ("Because this defense

necessarily involves a fact-specific inquiry, [i]t is generally premature to address the defense of qualified immunity in a motion to dismiss . . . ."); <u>The Cathedral Church of the Intercessor v. The Inc. Vill. of Malverne</u>, 353 F. Supp. 2d 375, 391 (E.D.N.Y. 2005) ("Though a qualified immunity defense may be advanced on a 12(b)(6) motion, it faces a 'formidable hurdle' when advanced at such an early stage in the proceedings." (quoting <u>McKenna v. Wright</u>, 386 F.3d 432, 434 (2d Cir. 2004)).

As part of considering a qualified immunity defense, the Court must engage in a two-pronged inquiry. First it must determine whether Plaintiff has sufficiently stated a violation of constitutional or statutory rights. See <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (stating that the threshold question, before passing on qualified immunity, is whether plaintiff has alleged any constitutional violation); <u>Higazy</u>, 2007 U.S. App. LEXIS 24443, at *20 n.8. As previously discussed, Plaintiff has pleaded certain facts, which if they are established, would make out a violation of Plaintiff's due process and statutory rights. If a violation is established, the Court must then ask whether "the right was clearly established." <u>Saucier</u>, 533 U.S. at 201. To determine whether a right was "clearly established," the Court considers

> (1) whether the right in question was defined
> with reasonable specificity, (2) whether the
> decisional law of the Supreme Court and the
> applicable circuit court support the existence

47

of the right in question, and (3) whether
under preexisting law a reasonable defendant
official would have understood that his or her
acts were unlawful.

Brown v. City of Oneonta, 106 F.3d 1125, 1131 (2d Cir. 1997)
(internal quotation marks and citations omitted) (overruled on
other grounds).

Plaintiff's rights to due process prior to termination of
her Section 8 benefits were defined with reasonable specificity and
the existence of such rights was supported by Supreme Court
decisions. See, e.g., Goldberg, 397 U.S. at 266-71. The Court
must determine, therefore, whether, under preexisting law, a
reasonable official would have understood Gallagher's actions to be
unlawful.

The only allegation involving Gallagher, which, if
established, violates Plaintiff's rights, relates to the undated,
unsigned decision, of questionable authorship, sent to Plaintiff in
February 2007. The Court finds it best to reserve decision on
whether Gallagher is entitled to qualified immunity. At this time,
there are too many unknown details regarding this accusation for
the Court to properly make a determination. Accordingly, Defendant
Gallagher's motion to dismiss the remaining claim based on
qualified immunity is DENIED at this time.

<u>CONCLUSION</u>

For the reasons set forth above, the Court ADOPTS Judge Wall's Report and Recommendation in its entirety, DENIES Plaintiff's request for a preliminary injunction, and GRANTS in part and DENIES in part Defendants' motion to dismiss. More specifically, the Court (1) DISMISSES Plaintiff's Section 1983 claims against Defendants Housing Authority, Ryan and Biscardi, (2) DISMISSES certain Section 1983 claims, as set forth herein, against Defendant Gallagher and (3) DENIES at this time Defendant Gallagher's motion to dismiss based on qualified immunity.

SO ORDERED.

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated:     Central Islip, New York
           December <u>26</u>, 2007